THOMAS F. SMITH *vs.* NEW ENGLAND COTTON YARN COMPANY.

Bristol.   October 24, 1916. — November 29, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Negligence,* Invited person, Of one controlling real estate. *Evidence,* Relevancy and materiality, *Res gestae.*

The proprietor of a cotton storehouse, into which ran a spur track from a railroad which was used in the proprietor's business, directed the railroad company to remove from the track freight cars which were inside the storehouse. On each side of the track was a platform on the level of the floor of the ordinary freight

car. The distance between the roof of the car and the roof of the storehouse was about three feet. The car farthest in the storehouse, provided with an automatic coupling, did not couple to the other cars when the switching crew backed against them, but was pushed still farther into the house and left there. The conductor of a switching engine then was directed by his superior to go behind the car to see what was on the track before he "made a hitch," and, in doing so fell into a slot or opening which ran across the platforms and was used for the closing and opening of a fire door. In an action against the proprietor of the storehouse for injuries so received, it was *held*, that a finding was warranted that use of the platform by the conductor to pass behind the car was natural and probable under the circumstances, so that he might be found to have been an invitee of the defendant.

At the trial of the action above described, there was evidence that the storehouse was dark, that the defendant was accustomed, when the door was open, to place a plank over the opening and that it was the duty of an employee of the defendant so to place the plank, but that there was no plank there when the plaintiff fell in. *Held*, that a finding was warranted that the plaintiff's injuries were caused by negligence for which the defendant was responsible.

On the evidence above described it also was *held* that the question of the due care of the plaintiff was for the jury.

It was *held*, that at the trial of the action above described, evidence was admissible in explanation of the plaintiff's conduct and as illustrative of his acts, tending to show that the plaintiff's superior directed him to go behind the car to see what was on the track back of it before he "made a hitch."

TORT for personal injuries received on November 4, 1912, when the plaintiff, as the conductor of a switching engine of the New York, New Haven, and Hartford Railroad Company, was on the defendant's premises removing a car from a shed, the injuries being caused by his falling into a slot or opening one foot wide through which a sliding fire door was opened and closed, and which ran across a platform beside the track along which he was passing to see if the track back of the car was clear before he caused the engine to bump against the car sufficiently to cause its automatic coupling to operate. Writ dated April 10, 1915.

In the Superior Court the case was tried before *Dubuque*, J. The material evidence is described in the opinion. At the close of the evidence, the defendant requested that a verdict be ordered in its favor, and also for the following rulings:

"4. If the jury find that the plaintiff's going into the storehouse as far as the slot or hole into which he fell was due solely because of the bumping back of the car and the order of the station agent, the defendant is not liable.

"5. If the jury find that, as the car stood in the storehouse, there was no reason why the defendant or its servants should an-

ticipate that the plaintiff would go as far into the storehouse as the fire doors slot, the defendant was not negligent and is not liable in this action.

"6. If the jury find that the plaintiff before he fell could have seen the hole or slot into which he fell if he had looked at the platform ahead of him as he walked towards the hole, he was not in the exercise of due care and cannot recover.

"7. There is no evidence that the defendant or its servants should have anticipated that the plaintiff would go where he did in the storehouse, or that they invited him to do so."

The judge refused to order the verdict or to give the rulings as requested, but gave the fifth ruling in the form described in the opinion.

There was a verdict for the plaintiff in the sum of $1,666.66; and the defendant alleged exceptions.

*A. J. Jennings,* for the defendant.

*H. F. Hathaway,* (*J. E. Warner* with him,) for the plaintiff.

BRALEY, J.    The jury would have been warranted in finding, that when injured by falling into the hole, slot or channel in the platform of the defendant's cotton storehouse, the plaintiff was in the performance of his duties as conductor of the switcher hauling cars therefrom, by direction of the freight agent of the railroad company, his employer, who had been requested by the defendant to remove the cars on the spur track inside the house so that it could run in more cars for use in its business.

The duty imposed on the defendant as an invitor under such circumstances was defined in *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216, 217, "The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of."    The rule as thus defined has been followed in *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572, 587, 588, *Hart* v. *Cole,* 156 Mass. 475, *McNee* v. *Coburn Trolley Track Co.* 170 Mass. 283, 284, *Garfield & Proctor Coal Co.* v. *Rockland-Rockport Lime Co.* 184 Mass. 60, 63, *Pickwick* v. *McCauliff,* 193 Mass. 70, 74, *Shaw* v. *Ogden,* 214 Mass. 475, 476.

The jury could find that the defendant, while familiar with the nature of the work of taking out cars by a switching engine, also knew that the operation must be carried on within the limits of the spur track located on its own premises, which "had a capacity of three cars outside of the building." It appears, and the jury could find from the plaintiff's evidence, that the engine had been coupled to three cars standing "outside," and when he "motioned for it to go ahead . . . the three cars were about two or three feet from the [fourth or] lone car which was standing inside of the building." The cars were equipped with automatic "self-couplings," and this car by its failure to unite having been forced further "into the building," it could have been found that the conductor or those in charge, acting with ordinary care, would endeavor to ascertain "what was on the track back of this car" before making another attempt "to make a hitch." The space between the top of the roof of the cars and the "place in the building on which the outside doors run" was not over three feet, while the platform whose height corresponded with the level of the floor of an ordinary freight car extended the entire length of the track. If when the car failed to couple, the conductor under the orders of the freight agent, his superior, stepped to the platform to investigate whether the track inside was clear, "before I hit that car again," his use of the platform as a feasible means of communication could be found to be as natural and probable under the circumstances, as if the area traversed had been left open and unoccupied.

It is not contended that before he was injured the plaintiff knew of the sunken slot or channel twelve inches in width where the fire door ran, which if left unguarded the jury could find might make the use of the platform hazardous to those unacquainted with the premises. The uncontradicted evidence of the defendant's superintendent shows, that when as on the day of the accident the door remained unclosed, the slot was covered by a movable plank, the placing of which "was the business of the man that was sent to the storehouse in charge of the gang to handle this plank, to put it into the slot." And "that at the time of the accident the man who had charge of the gang that was sent . . . to the storehouse determined whether the car should be unloaded" on the portion of the track inside of the building, "or whether they should be unloaded on the outside." If the defendant's

representative knew or in the exercise of reasonable diligence should have known of the absence of the plank, the defendant is bound by his knowledge and conduct. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172, 181. It could have been found further on the evidence of the freight agent, that whenever the door was open the plank usually was in the slot. And the entire evidence if believed was sufficient to convince the jury, that not only was the placing and removal of the plank as well as the opening and closing of the door wholly within the supervision and control of the defendant, with which the employees of the railroad never interfered, but the use of the platform by trainmen when switching cars had not been forbidden nor shown to be unreasonable or unnecessary.

The evidence of the superintendent being sufficient to justify the jury in finding that the track and platform were concurrently used in the prosecution of the defendant's business, of which the switching in and out of cars on the entire length of the spur track formed a part, it could not be ruled as matter of law that the platform or any part of it had been designed or reserved for the exclusive use of the defendant's own employees, over which the plaintiff would pass at his peril. It was a question of fact whether a reasonably prudent and careful man familiar with his own premises where the work he requested was to be performed, and the manner and means ordinarily required for its accomplishment, should have been aware that the men engaged in moving the cars might suffer injuries if the plank was not in place, or if being ignorant of its existence they were not warned of the slot in the platform, which if left exposed might make the use of the premises in the prosecution of their work unsafe and dangerous. *Garfield & Proctor Coal Co.* v. *Rockland-Rockport Lime Co.* 184 Mass. 60, 63.

The plaintiff, however, had the burden of proving his own due care, and the evidence, that he passed to the platform by the cotemporaneous direction of the freight agent to the plaintiff, to see what was on the track back of the car before he "made a hitch," was admissible in explanation of his conduct, and as illustrative of his acts. *Conklin* v. *Consolidated Railway*, 196 Mass. 302, 306. Wigmore on Evidence, § 1770. The accident happened in the day time. But on the plaintiff's evidence, which the jury were at

liberty to follow, the storehouse was unlighted and quite dark, and never having been there before he was unfamiliar with the place. The only light visible to him came through the doorway as he walked down the platform followed by the freight agent immediately behind him. While we all agree that the question of the defendant's negligence was for the jury, only a majority of the court are of opinion that, whether the plaintiff by reason of the darkness and his unfamiliarity with the surroundings should have paused and investigated his footing before attempting to pass, was also for their determination. *Hanley* v. *Boston Elevated Railway,* 201 Mass. 55, 57, 58. *Faxon* v. *Butler,* 206 Mass. 500, 504, and cases cited. *McLeod* v. *Rawson,* 215 Mass. 257, 260. *Gallagher* v. *Murphy,* 221 Mass. 363.

The motion to direct a verdict for the defendant, and the fourth, sixth and seventh requests were denied rightly for reasons previously stated. The fifth request could not have been given in terms. It omitted the essential element already pointed out, that the plaintiff as an invitee was on the premises to perform work, which included whatever became reasonably necessary to remove the cars, even if this required him to go outside the line of the slot of the fire door. The request as thus modified having been given, the exceptions should be overruled.

*So ordered.*