Kern, Leila R., J.
The plaintiff, John Mannix, is the administrator of the estate of John T. Bresnahan, Jr. Mannix' claimed that defendants James Tighe and Francis Callahan violated their fiduciary duties as trustees by depriving Bresnahan’s estate of its beneficial interest in trust property and the proceeds generated from its sale. By agreement, judgment has entered on Counts III and IV against Brian Tighe. After this court (Gershengorn, J.) entered orders on plaintiffs Motions for Summary Judgment as against each of the remaining defendants[3] allowing said motions as to Count I (breach of duty of loyalty) and denying the motions as to Count II (breach of duty to protect the property), the matter was set for a Damages Assessment hearing on November 18, 2009. Having heard testimony from both defendants and accepted 17 exhibits into evidence this court makes the following Findings of Fact and Rulings of Law.[4]
FINDINGS OF FACT
Certain background facts are undisputed. On December 17, 1987, Bresnahan, Callahan and Tighe executed a Declaration of Trust in which they created the 2273 Main Street Trust. The Declaration of Trust’s preamble declares that Bresnahan, Callahan and Tighe or their successors in interest would hold in trust “all real estate and other property conveyed or transferred to them as trustees.” In terms of beneficiaries, the second paragraph provided that “[t]he entire beneficial interest of the Trust shall be vested in the beneficiaries named in a schedule of beneficial interests signed by and in the possession of the Trustees.” Concerning modification, the eighth paragraph allowed for the Trust to be “amended, altered, revoked or terminated in whole or in part by a two-thirds vote of the Trustees by an instrument in writing signed and acknowledged by the Trustees and recorded at Middle-sex North District Registry of Deeds.” (Emphasis added.)
The Declaration of Trust also addressed the possible passing of a Trustee in the ninth paragraph, which stated that “upon the death of the trustee hereunder, a successor Trustee may be appointed by an instrument in writing signed and acknowledged by beneficiaries ...” The Trust, however, also provided that a “vacancy of a Trustee caused by death .. . need not be filled if two Trustees are still active.”
Bresnahan died on September 21, 2002. Callahan and Tighe did not fill the trustee vacancy and themselves served as the trustees of the Trust. Both defendants testified at the damages assessment hearing, and this court finds credible, that Bresnahan while a trustee bilked them of hundreds of thousands of dollars through their various business dealings over the years. They each indicated that Bresnahan had withdrawn funds from their many business accounts for his personal use. They also both testified that when Callahan confronted Bresnehan with some of their discoveries, Bresnahan told Callahan to “keep the Tewksbury properiy which was in the 2273 Main Street Realty Trust as well as any interest he owned in that property.” Based on that oral statement alone Callahan did not pursue any action against Bresnahan for the misappropriations.
RULINGS OF LAW
Unfortunately for the defendants, neither of them followed up by submitting, in writing signed and acknowledged by the Trustees and recorded at Middle-sex North District Registry of Deeds an amendment to the trust reflecting Bresnahan’s transfer of the 2273 Main Street property. As indicated supra the Declaration of Trust dictates that any amendment, alteration, revocation, or termination of the Trust required a two-thirds vote of the trustees by an instrument in writing signed and acknowledged by the trustees and recorded at the registry of deeds. Transferring the one asset of the property to Callahan and Tighe and relinquishing Bresnahan’s 30% interest in it was an alteration that fit into this category. It is undisputed that no such writing exists.
Neither Callahan nor Tighe changed the Schedule of Beneficiaries to show a change in ownership in this property; i.e., that it now belonged to just Callahan and/or Tighe (or their beneficiaries) and not any part to Bresnahan or his beneficiaries. The Trust’s terms rendered any oral alteration ineffective and Bresnahan maintained his beneficial interest in the property.[5] Where a trust instrument explicitly provides for a power and method of modification, that power must be exercised in strict conformity with the trust’s terms. See, Kirschbaum v. Wennett, 60 Mass.App.Ct. 807, 810 (2004), citing Fogelin v. Nordblom, 402 Mass. 218, 223 (1988). Here, it is clear in the eighth paragraph of the Trust exactly what was required.
Finally, Tighe and Callahan are jointly and severally liable for breaches of fiduciary duties. Breach of fiduciary duty is considered a tort under Massachusetts law. See, Doe v. Harbor Schools, Inc., 446 Mass. 245, 254 (2006), and “it is a familiar rule of law, that in cases in tort, where two or more are liable to an action, they are liable jointly and severally . . .” Donnelly v. Larkin, 327 Mass. 287, 296 (1951), and cases cited.
DAMAGES
Pursuant to the Trust, Bresnahan and Callahan each held a 30% interest in the trust and Tighe held a 40% interest. The property was first transferred to Brian Tighe for $40,000 and the trust held a $40,000 mortgage on the property. Brian Tighe then pursued the necessary permits and variances to prepare the property for sale to a developer. Once he had achieved *449 that end, the property was conveyed to Heritage Builders, Inc. on June 6, 2005, for $165,144.92 including $144.92 as a tax adjustment. While plaintiff submitted a post-trial filing with various assertions about the distribution of the gross amount paid by Heritage Builders, this court does not find it is more probably true than not that those distributions were in fact not legitimate. Callahan, in his post-trial filing with the court, indicated that his share of that sale was $31,000.00, which he received at the closing. Bresnahan’s estate has claimed a beneficial interest of 30%; i.e., the same as Callahan’s share. Therefore, this court concludes it was $31,000.00 that should have been received by Bresnahan’s estate at that time and not the $38,106.76 as claimed in plaintiffs post-trial filing.
The plaintiff argues, citing to Quinton v. Gavin, 64 Mass.App.Ct. 792 (2005), that the estate is entitled to interest on its damages from the date of the sale of the property (June 6, 2005) when the estate was “deprived of [its share] of the sale proceeds.” While that might be allowed in certain cases, this court finds it is not appropriate here. In Quinton, 64 Mass.App.Ct. at 792, the appellate court indicated that the lower court found “Gavin to be a thoroughly reprehensible character who swindled [over ten] plaintiffs and then compounded his misdeeds by engaging in deceptive litigation tactics and testifying falsely at trial.” Here, on the contrary, this court finds the defendants to be the individuals who were taken advantage of and who naively did not check the Declaration of Trust to determine how to assure that Bresnahan’s oral promise to give up his interest in the 2273 Main Street property would be carried out. Therefore, this court will follow the practice, pursuant to G.L.c. 231 §6B, that “prejudgment interest in a tort action accrues from the date of commencement of the action [the date the complaint was filed]. That date ”is the earliest acceptable date from which interest may be calculated." St. Paul Surplus Lines Insurance Company v. Feingold & Feingold Insurance Agency, Inc., 427 Mass. 372, 377 (1998).
JUDGMENT
For the foregoing reasons, judgment shall enter for the plaintiff in the amount of $31,000 without costs or attorneys fees, plus interest from the date this case was filed with the court.

Papers 25 (September 2, 2009, as to Callahan) and 30 (September 21, 2009, as to Tighe).

Plaintiff and defendant Callahan have each submitted post-hearing proposed findings and in plaintiffs case proposed rulings of law. Defendant Tighe, unrepresented by counsel, submitted only a letter to the court that included many matters extraneous to the issue of damages in the case before this court.

It was for this reason Summary Judgment entered in favor of the plaintiff as against each defendant and for this reason this court must, although it may in fact be inequitable, award damages to Bresnahan’s estate for his share of the profits from the sale of the property at 2273 Main Street in Tewksbury, Massachusetts, the only property owned by the Trust.